UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRIS BRUCKER, TREVER S. NUTTING,
XIOMARA RAVELO, WILFREDO E. RETANA and
BEATRIX CELSA RETANA, individually, and on
behalf of all others similarly situated,

                 Plaintiffs,                 No. 2:10-cv-00405-FtM-29SPC

vs.

LOWES HOME CENTERS, INC., a North Carolina
Corporation, and NATIONAL GYPSUM COMPANY,
a Delaware Corporation,

                 Defendants.

_____/

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD
ON CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT
<u>PROTECTION AND INCORPORATED MEMORANDUM IN SUPPORT</u>**

THEODORE J. LEOPOLD
Fla. Bar. No. 705608
GREGORY S. WEISS
Fla. Bar No. 163430
LEOPOLD LAW, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
Fax: (561) 515-1401

CHARLES J. La DUCA
DANIEL M. COHEN
CUNEO GILBERT & La DUCA LLP
106-A Columbus Street
Alexandria, VA 22314
Tel.: (202) 789-3960
Fax: (202) 789-1813

BRIAN W. WARWICK
Fla. Bar No. 0605573
VARNELL & WARWICK, P.A.
20 La Grande Blvd.
The Villages, FL 32159
Tel.: (352) 753-8600
Fax: (352) 753-8606

*Attorneys for Plaintiffs*

Dated:  January 5, 2012

i

**TABLE OF CONTENTS**

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

  Legal Standards for Attorney-Client Privilege and Work Product Protection . . . .    5

  Point 1 - There Is No Attorney-Client Privilege or Work Product Protection
      For NGC's Communications With Outside Lobbyists . . . . . . . . . . . . . .    8

  Point 2 - There Is No Attorney-Client Privilege or Work Product Protection
      For NGC's Communications With Public Relations Firms . . . . . . . . . . .    11

  Point 3 - There Is No Attorney-Client Privilege or Work Product Protection
      For NGC's Communications With Outside Environmental Consultants . .    12

  Point 4 - There Is No Attorney-Client Privilege or Work Product Protection
      For NGC's Communications With the Gypsum Association and
      Other Industry Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

  Point 5 - There is No Attorney-Client Privilege For NGC Communications
      To Large Groups of Corporate Employees Including One Attorney . . . .    16

  Point 6 - NGC Has Failed to Establish Attorney-Client Privilege or
      Work Product Protection for Documents Described Only
      As "Loose Files" With No Addressee or Subject Matter . . . . . . . . . . . . .    17

  Point 7 – NGC Has Failed to Establish That Documents Prepared
      Prior to October 21, 2009 Are Work Product Prepared
      in Reasonable Anticipation of Identifiable Litigation . . . . . . . . . . . . . . . .    18

  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Burke v. Lakin Law Firm,*
     2008 U.S. Dist. LEXIS 833 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

*CSX Transp., Inc. v. Admiral Ins. Co.,*
     1995 U.S. Dist. LEXIS 22359 (M.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . .     7-8

*Florida Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legisl. Info. Services*,
     7 So. 3d 511 (Fla. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

*Hunter's Ridge Golf Co. Inc. v. Georgia-Pacific Corp.,*
     233 F.R.D. 678 (M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

*In re American-Manufactured Drywall Products Liab. Litig.,*
     716 F. Supp. 2d 1367 (J.P.M.L. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

*In re Hillsborough Holdings Corp.,*
     132 B.R. 478 (Brcy, M.D. Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6, 7, 9,
                                                                                                                                 11, 19

*In re New York Renu with Moisturetoc Product Liab. Litig.,*
     2008 U.S. Dist. LEXIS 88515 (D.S.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

*In re Seroquel Products Liab. Litig.,*
     2008 U.S. Dist. LEXIS 39467 (M.D. Fla. 2008) . . . . . . . . . . . . . . . . . . . . . . . .     16-17

*MCC Mgm't of Naples v. Arnold &Porter, LLP,*
     2008 U.S. Dist. LEXIS 106444 (M.D. Fla. 2008) . . . . . . . . . . . . . . . . . . . . . . .     6

*North Carolina Electric M'ship Corp. v. Carolina Power & Light Co.,*
     110 F.R.D. 511 (M.D. N.C. 1986) . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . .     10

*Southern Bell Tel. Co. v. Deason*,
     632 So. 2d 1377 (Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5, 6

*Spitznagel v. R&D Italia, LLC,*
     2011 U.S. Dist. LEXIS 34066 (M.D. Fla. 2011) . . . . . . . . . . . . . . . . . . . . . . . .     8

*The St. Joe Company v. Liberty Mutual Ins. Co.,*
     2006 U.S. Dist. LEXIS 85260 (M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . .     7

## <u>TABLE OF AUTHORITIES</u> (cont'd)

<u>Cases</u> (cont'd)                                                                                                    <u>Page</u>

*United States v. Duke Energy Corp.*,
    214 F.R.D. 383 (M.D. N.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Lockheed Martin Corp.,*
    995 F. Supp. 1460 (M.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States Postal Service v. Phelps Dodge Refining Corp.,*
    852 F. Supp. 156 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12-13

*Volpe v. Conroy, Simburg & Ganon, P.A.*,
    720 So. 2d 537 (Fla. 4th Dist. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wolf Creek Ski Corp. v. Leavell-McCombs Joint Venture*,
    2006 U.S. Dist. LEXIS 23093 (D. Colo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Statutes and Rules</u>

Federal Rules of Civil Procedure, Rule 26(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure, Rule 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 18

Federal Rules of Civil Procedure, Rule 26(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 18

Federal Rules of Civil Procedure, Rule 34(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Evidence, Rule 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fla. Stat. § 90.502(4)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 11.045(1)(f), Florida Statutes (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Section 112.3215, Florida Statutes (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## INTRODUCTION

Pursuant to Rules 26(b) and 34(a) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned attorneys, hereby move to compel production of documents withheld by Defendant National Gypsum Company ("NGC") on claims of attorney-client privilege and/or work product protection. In support of this motion, Plaintiffs state as follows.

NGC has provided to Plaintiffs a Privilege Log listing approximately 3,000 documents withheld from production on claims of attorney-client privilege and/or work product protection. The Privilege Log was generated in *Yee v. National Gypsum Company*, No. 3:09-cv-8189 (D. Ariz.), a now-dismissed action involving claims very similar to those in this action. After counsel met and conferred, NGC provided a yellow-highlighted Privilege Log to indicate which of the documents it deemed responsive in this class action on behalf of Florida property owners, as distinguished from the *Yee* action that was a putative nationwide class action. Approximately 1,300 documents on the Privilege Log are yellow-highlighted.[1] Plaintiffs draw the Court's attention to numerous respects in which NGC has asserted overbroad and unjustified claims of attorney-client privilege and/or work product protection:

1. NGC has withheld 172 yellow-highlighted documents sent between NGC employees and Steven Primrose, a non-lawyer lobbyist with Capitologic, LLC, of Washington, DC.[2] As set forth below, there is no attorney-client privilege between NGC's in-house counsel and an outside non-lawyer lobbyist, and lobbying services are not legal services in any event.

---

[1] A copy of NGC's yellow-highlighted Privilege Log (Exhibit 1) will be filed separately under seal. When Plaintiffs requested a description of the job responsibilities of the persons whose names appear on the Privilege Log, NGC referred Plaintiffs to a 48-page NGC Organization Chart (Exhibit 2), which will be filed separately under seal. That Organization Chart is of almost no use whatsoever in describing the job responsibilities of the NGC employees on the Privilege Log.
[2] A list of 172 documents yellow-highlighted on NGC's Privilege Log, described as sent to or from Mr. Primrose, is attached hereto as Exhibit 3.

2.     NGC has withheld 36 yellow-highlighted documents sent between NGC employees and public relations firms.[3] As set forth below, unless these communications with public relations firms went beyond conventional public relations and were strictly necessary for attorneys' legal services to be effective, they are not protected by the attorney-client privilege.

3.     NGC has withheld 33 yellow-highlighted documents sent between NGC employees and various environmental consultants.[4] As set forth below, the attorney-client privilege protects these documents only if the consultant reported to the corporate attorney to enable the attorney to put a confidential report into usable form as part of the attorney's legal advice.

4.     NGC has withheld 29 yellow-highlighted documents sent between NGC employees and the Gypsum Association, a trade association whose members are NGC and nine of its competitors, i.e., other domestic and Canadian gypsum producers.[5] Some of the documents are claimed as protected by the joint defense and/or common interest privilege. As set forth below, communications among business competitors are outside of any joint defense or common interest privilege, absent an agreement among the independent businesses to promote a joint legal defense under conditions of confidentiality.

5.     NGC has withheld 88 yellow-highlighted documents distributed to large groups of NGC employees, including only one employee identified as an attorney, Samuel

---

[3] A list of 36 documents yellow-highlighted on NGC's Privilege Log, described as sent to or from public relations firms, is attached hereto as Exhibit 4.

[4] A list of 33 documents yellow-highlighted on NGC's Privilege Log, described as sent to or from environmental consulting firms, is attached hereto as Exhibit 5.

[5] A list of 29 documents yellow-highlighted on NGC's Privilege Log, described as sent to or from the Gypsum Association, or other outside entities including Duke Energy (one yellow-highlighted document), Mediation Inc. (two yellow-highlighted documents), and Saint Gobain (one yellow-highlighted document), is attached hereto as Exhibit 6.

Schiffman, NGC's Vice President, General Counsel, and Secretary.[6] As set forth below, distribution of these documents to one attorney among large groups of non-attorney NGC employees belies their characterization on NGC's Privilege Log as communications whose primary purpose was obtaining Mr. Schiffman's legal advice. Rather than legal advice, their principal purpose was business.

6.      NGC has described only as "Loose Files" (without addressee or subject matter) a total of 251 yellow-highlighted documents, i.e., 53 yellow-highlighted documents withheld from the personal files of Patrick Radigan, NGC's Director of Environmental Affairs, 22 yellow-highlighted documents withheld from the personal files of Nancy Spurlock, NGC's Director of Corporate Communications, and 176 yellow-highlighted documents withheld from NGC corporate files described as authored by Mr. Radigan.[7] As set forth below, such sparse description of the basis for claims of attorney-client privilege or work product protection on a Privilege Log is insufficient under Fed. R. Civ. P. 26(b)(3) & (5). The generic descriptor "Loose Files" (without addressee or subject matter) is a synonym for collections of pre-existing documents, which must be produced if relevant or likely to lead to the discovery of relevant materials.

7.      NGC has claimed work product protection (without also claiming attorney-client privilege) for 14 documents prepared prior to the filing of the *Yee* action on October 21, 2009, characterizing them as prepared in anticipation of litigation.[8]

---

[6] A list of 88 documents yellow-highlighted on NGC's Privilege Log, described as sent to large groups of NGC employees, is attached hereto as Exhibit 7.

[7] A list of 251 documents yellow-highlighted on NGC's Privilege Log, described as "Loose Files" of Mr. Radigan or Ms. Spurlock, with no addressee, is attached hereto as Exhibit 8.

[8] A list of 14 documents yellow-highlighted on NGC's Privilege Log, characterized as work product prepared in anticipation of litigation but not attorney-client privileged, and dated before October 21, 2009, is attached hereto as Exhibit 9.

As set forth below, such characterization as prepared in anticipation of litigation can be justified only by reference to specifically identifiable, threatened, litigation. *Yee* was the first action filed against NGC containing allegations similar to those in this action of sulphurous off-gassing of NGC drywall.[9] The first action asserting similar claims against Chinese drywall producers, *Allen v. Knauf Plasterboard (Tianjin) Co., Ltd., et al*., (No. 2:09-cv-54, M.D. Fla.), was filed on January 30, 2009.[10] In the absence of NGC's specific identification of threatened litigation for which work product documents were prepared, those dated before October 21, 2009 are outside of the scope of work product protection.

Finally, it appears that NGC has arbitrarily applied (or failed to apply) yellow-highlighting to the documents listed on its Privilege Log, based on a distinction it asserts between the scope of permissible discovery in the *Yee* action asserting a nationwide class and this action asserting a Florida property-owner class. Any comparison of the named persons, dates and subject matters of the documents listed on NGC's Privilege Log that are and are not yellow-highlighted, shows that the yellow-highlighted documents form only a fraction of the documents on the Privilege Log that concern the very same subject matter, i.e., NGC's orchestration of a large-scale lobbying and public relations campaign to disassociate its drywall products from the allegations of defective products lodged against Chinese drywall producers.[11]

---

[9] The *Yee* Complaint is attached hereto as Exhibit 10.

[10] The *Allen* Complaint is attached hereto as Exhibit 11.

[11] To illustrate NGC's arbitrary selection of what is yellow-highlighted and what is not, based on asserted distinction in relevance as to claims brought on behalf in a Florida resident class action and a nationwide Class action, Plaintiffs call the Court's attention to the following documents NGC chose not to highlight that include the words "Brincku" or "Florida" in their description: (Brincku) NGCPrivLog00744, 00772, 00778, 01057, 01084, 01754, 01907, 01963, 02847, 02896, 02946, and 02990; (Florida) NGCPrivLog01057, 01713. 01821, 01883, 02825, 02869, 02946, and 02957.

For the reasons summarized above and set forth in greater detail below, Plaintiffs request an Order compelling NGC to produce the documents listed on Exhibits 3 through 9 hereto, as well the documents it has failed to highlight on its Privilege Log that were: (1) sent to or from Steven Primrose, (2) sent to or from public relations firms, (3) sent to or from environmental consultants, (4) sent to or from the Gypsum Association or other industry participants, (5) distributed to large groups of NGC employees, (6) are characterized as "Loose Files" with no addressees, or (7) are claimed as protected by the work product doctrine (and not the attorney-client privilege) that were prepared before October 21, 2009, the date of the filing of the first product liability action asserting claims of defective drywall against NGC.

## ARGUMENT

### Legal Standards for Attorney-Client Privilege and Work Product Protection

In these actions in which all claims are governed by Florida state law, Florida state law governs the application of the attorney-client privilege. Fed. R. Evid. 501. Florida has codified the attorney-client privilege, as follows:

> A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
>
> 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
>
> 2. Those reasonably necessary for the transmission of the communication.

Fla. Stat. § 90.502(4)(c).

The Florida Supreme Court has clarified the proper legal standards used to determine whether the attorney-client privilege has been satisfied in the corporate context. *Southern Bell Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994). In *Southern Bell,* the Florida Supreme

Court held that for a communication to fall within the attorney-client privilege, it must satisfy five requirements:

> (1) the communications would not have been made but for the contemplation of legal services;

> (2) the employee making the communication did so at the direction of his or her corporate supervisor;

> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;

> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; and

> (5) the communication is not disseminated beyond those persons who because of the corporate structure, need to know its contents.

*Id.* at 1383. To minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context are subjected to a heightened level of scrutiny. *Id*. The attorney-client privilege protects the communication of confidential information, not necessarily the underlying information itself. *MCC Mgm't of Naples v. Arnold & Porter*, *LLP*, 2008 U.S. Dist. LEXIS 106444 at *5 (M.D. Fla. 2008). With limited exceptions, disclosure of attorney-client communications to a third party negates the existence of the privilege. *Volpe v. Conroy, Simberg & Ganon, P.A.*, 720 So. 2d 537, 539 (Fla. 4th Dist. Ct. App. 1998). When a corporation claims attorney-client privilege for communications with outside consultants, a privilege may be found only if the consultant reported to the corporate attorney to enable the attorney to put the confidential report into usable form as part of the attorney's legal advice. *In re Hillsborough Holdings Corp*., 132 B.R. 478, 481 (Brcy. M.D. Fla. 1991). Where the outside consultant's report to corporate counsel collects and analyzes information from non-corporate sources, i.e., not from client confidences, the report is

6

not privileged. *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161-63 (E.D.N.Y. 1994). In addition, no privilege attaches if the subject of the communication between the outside consultant and the corporate attorney was the preparation of documents intended to be made public. *In re Hillsborough Holdings Corp.*, *supra*, 132 B.R. at 481.

As work product protection is a limitation on discovery otherwise applicable in federal court, even where state law of attorney-client privilege applies, federal law of work product governs. *Hunter's Ridge Golf Co. Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006). The work product doctrine protects materials prepared by an attorney in anticipated or ongoing litigation. *The St. Joe Company v. Liberty Mutual Ins. Co.*, 2006 U.S. Dist. LEXIS 85260 at *14 (M.D. Fla. 2006). If work product protection is claimed for documents prepared in advance of pending litigation, the party asserting the protection has the burden of establishing that litigation was reasonably anticipated at the time of the documents' preparation. *Id.* at *22-23. The party asserting work product must show that a specific, identifiable litigation was either pending or threatened at the time of the documents' preparation. *In re Hillsborough Holdings Corp.*, *supra*, 132 Br. at 481. The gathering of historical corporate business records for anticipated or ongoing litigation is not protected as work product. *United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1465 (M.D. Fla. 1998). Nor are documents collected from third parties, including media reports or newspaper clippings, protected as work product. *Hunter's Ridge Golf Club*, *supra*.

The party invoking the attorney-client privilege or work product protection has the burden of proving the sought-after protection. *St. Joe Company*, *supra*, 2006 U.S. Dist. LEXIS 85260 at *19. This burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions. *CSX Transp.*,

*Inc., v. Admiral Ins.Co.,* 1995 U.S. Dist. LEXIS 22359 *4, 7-8 (M.D. Fla. 1995) (internal quotes

omitted). Pursuant to Fed. R. Civ. P. 26(b)(3) & (5), this evidence is generally provided through

the use of a privilege log identifying each document and the individuals who were parties to the

communications with sufficient detail to permit the compelling party or court to determine if the

privilege is properly claimed. *CSX Transportation, supra.* More specifically, a proper privilege

log should contain the following information: (1) the name and job title or capacity of the author

of the document; (2) the name and job title or capacity of each recipient of the document; (3) the

date the document was prepared and if different, the date(s) on which it was sent to or shared

with persons other than the author(s); (4) the title and description of the document; (5) the

subject matter addressed in the document; (6) the purpose(s) for which it was prepared or

communicated; and (7) the specific basis for the claim that it is privileged. *Spitznagel v. R&D*

*Italia, LLC*, 2011 U.S. Dist. LEXIS 34066 at *15-16 (M.D. Fla. 2011).

   With the foregoing general principles in mind, Plaintiffs hereby proceed to detail the

defects in NGC's overbroad claims of attorney-client privilege and work product protection.

<div align="center">

**Point 1**

**There Is No Attorney-Client Privilege or Work Product Protection**
**For NGC's Communications With Outside Lobbyists**

</div>

   NGC's yellow-highlighted Privilege Log lists 172 documents sent to or from Steven

Primrose, with Capitologic, LLC, of Washington, DC.[12] See Exhibit 3. NGC chose not to

yellow-highlight many additional documents described on its Privilege Log as sent to or from

Mr. Primrose.

   Mr. Primrose is a third party in relation to attorney-client communications between NGC

in-house counsel and NGC employees. As such, disclosure of NGC's asserted attorney-client

---

[12] The Capitologic website, www.capitologic.com, reveals that Mr. Primrose, its Managing Principal, is a lobbyist
whose highest level of formal education is a bachelor's degree in Political Science from Arizona State University.

communications to Mr. Primrose negates the privilege for such communications. *Volpe, supra*, 720 So. 2d at 539. Since the subject of Mr. Primrose's communications with NGC was the formulation of statements to be made to government policy-makers, i.e., statements intended for third parties, those communications are not privileged. *In re Hillsborough Holdings Corp.*, *supra*, 132 B.R. at 481.

In addition, to the extent Mr. Primrose was performing lobbying services on behalf of NGC, his lobbying services were not legal services. Mr. Primrose is not an attorney. Florida law clearly distinguishes between lobbying services from legal services. *Section 112.3215, Florida Statutes* (2008), which pertains to lobbying before the executive branch, defines "lobbies" and "lobbyist" as follows:

> (f) "Lobbies" means seeking, on behalf of another person, to influence an agency with respect to a decision of the agency in the area of policy or procurement or an attempt to obtain the goodwill of an agency official or employee.

> * * *

> (h) "Lobbyist" means a person who is employed and receives payment, or who contracts for economic consideration, for the purpose of lobbying, or a person who is principally employed for governmental affairs by another person or governmental entity to lobby on behalf of that other person or governmental entity. "Lobbyist" does not include a person who is:

> 1.    *An attorney*, or any person who represents a client in a judicial proceeding or in a formal administrative proceeding conducted pursuant to chapter 120 or any other formal hearing before an agency, board, commission, or authority of this state.

Similarly, Section 11.045(1)(f), Florida Statutes (2008), defines legislative lobbying as "influencing or attempting to influence legislative action or nonaction through oral or written communications or an attempt to obtain goodwill of a member or employee of the Legislature."

When the regulatory and disciplinary regimes for lobbying services in the foregoing Florida statutes were challenged as unconstitutional infringement on the exclusive jurisdiction of

the Florida Supreme Court to regulate the practice of law in the state, the challenge was rebuffed on the basis that lobbying services and legal services were distinct from one another. *Florida Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legisl. Info. Services*, 7 So. 3d 511 (Fla. 2009). Mr. Primrose as a lobbyist for NGC was therefore not assisting NGC's legal counsel in the provision of legal services. He was providing a distinct service, i.e., lobbying, the effort to influence government executive and/or legislative action or policy, as distinguished from advising on or litigating claims in the federal or state courts or quasi-judicial agencies, i.e., legal services.

In any event, federal courts have held, in the context of determining the proper reach of the attorney-client privilege, that lobbying activities, even if conducted by attorneys, are not protected by the attorney-client privilege. *Wolf Creek Ski Corp. v. Leavell-McCombs Joint Venture*, 2006 U.S. Dist. LEXIS 23093 at *6 (D. Colo. 2006); *North Carolina Electric M'ship Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D. N.C. 1986). And since by definition, lobbying services are not services performed in ongoing or anticipated litigation, such services are not protected by the work product doctrine.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as having been sent to or from Mr. Primrose, whether or not NGC chose to yellow-highlight them.[13] NGC's communications with a lobbyist on a strategy for lobbying government officials as to claims of defective drywall are relevant, whether those claims were asserted in Florida or another state.

---

[13] E.g., NGC chose not to yellow-highlight NGC01806, apparently based on its asserted lack of relevance, while the is document described as stating the scope of Capitologic work for NGC, a subject matter indisputably relevant to NGC's burden of establishing the attorney-client privilege for its communications with Capitologic.

**Point 2**

**There Is No Attorney-Client Privilege or Work Product Protection
For NGC's Communications with Public Relations Firms**

NGC's yellow-highlighted Privilege Log lists 36 documents sent to or from public relations firms Hill & Knowlton, and/or Porter Novelli. See Exhibit 4. NGC chose not to yellow-highlight many additional communications with public relations firms Hill & Knowlton, or Porter Novelli. As stated above, where the subject matter of communications between a corporate attorney and an outside consultant is the preparation of statements intended to be released publicly, there is no attorney-client privilege or work product protection. *In re Hillsborough Holdings Corp.*, *supra*, 132 Br. at 481.

Federal courts have generally found that the communications between attorneys and public relations firms, even when employed by attorneys seeking to complement litigation strategy with publicity strategy, are not protected by the attorney-client privilege or work product protection. Only in unusual circumstances, when the services of the public relation firm are strictly necessary for the attorney's services to be effective, are communications between the attorney and the public relations firm privileged. *In re New York Renu with Moistureloc Product Liab. Litig*., 2008 U.S. Dist. LEXIS 88515 at *19-26 (D.S.C. 2008); *Burke v. Lakin Law Firm*, 2008 U.S. Dist. LEXIS 833 at *8-9 (N.D. Ill. 2008).

Since NGC's Privilege Log describes its communications with Hill & Knowlton, and Porter Novelli, in conventional terms of publicity strategy on the subject matter of claims of defective drywall against Chinese drywall producers, those communications are outside the scope of the attorney-client privilege and work product protection.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as having been sent to or from public relations firms Hill & Knowlton, or Porter

Novelli, whether or not NGC chose to yellow-highlight them. NGC's communications with third parties on a public relations strategy for claims of defective drywall are relevant, whether those claims were asserted in Florida or another state.

**Point 3**

**There Is No Attorney-Client Privilege or Work Product Protection
For NGC's Communications With Outside Environmental Consultants**

NGC's yellow-highlighted Privilege Log lists 33 documents sent to or from environmental consulting firms ARCADIS, Pace Analytical, HAS Engineering, Test America, Packer Engineering, or LS3P Associates. See Exhibit 5. NGC chose not to yellow-highlight many additional communications with these consultants. As stated above, where the consultant's report to corporate counsel collects and analyzes information from non-corporate sources, i.e., not from client confidences, the report is not privileged. *United States Postal Service v. Phelps Dodge Refining Corp.*, *supra*, 852 F. Supp. at 161-62.

*Phelps Dodge* is particularly instructive as to NGC's claims of privilege on communications with environmental consulting firms. There, the court found that studies of soil conditions at a contaminated site by environmental consultants hired by a party were not privileged, stating:

> [T]hese consultants based their opinions on factual and scientific evidence they generated through studies and collected through observation of the physical condition of the Property, information that did not come through client confidences. Such underlying factual data can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations. There are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.

*Phelps Dodge*, *supra*, 852 F. Supp. at 161-62. The court also found that the communications between a party and the environmental consultants were not protected by the work product doctrine. *Id.*

Because NGC has not shown that its communications with environmental consultants concerned the consultants' reports on information collected and analyzed from confidential client sources and necessary to enable its corporate attorney to provide legal advice, those communications are outside the scope of the attorney-client privilege and work product protection.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as having been sent to or from environmental consulting firms, whether or not NGC chose to yellow-highlight them.[14] NGC's communications with environmental consultants on studies of drywall installed in customer premises that is claimed to be defective is relevant, whether the studied drywall was installed in a customer premise in Florida or another state.

**Point 4**

**There Is No Attorney-Client Privilege or Work Product Protection For NGC's Communications With the Gypsum Association and Other Industry Participants**

NGC's yellow-highlighted Privilege Log lists 29 documents sent to or from the Gypsum Association, a trade association whose ten members are NGC and nine of its North American competitors.[15] NGC chose not to yellow-highlight many more communications with the Gypsum Association that appear on its Privilege Log. NGC also yellow-highlighted documents sent to or

---

[14] E.g., NGC chose not to yellow-highlight NGCPrivLog00235, based on an asserted lack of relevance, while  the document is described as a plan for ARCADIS testing, a subject matter indisputably relevant to NGC's burden of establishing the attorney-client privilege for its communications with ARCADIS.
[15] A general description of the nature of the Gypsum Association can be found at its website, www.gypsum.org.

from other third parties: Duke Energy (one yellow-highlighted document)[16], Mediation Inc. (two yellow-highlighted documents) and Saint Gobain and other building materials competitors (two yellow-highlighted documents). See Exhibit 6. NGC chose not to yellow-highlight many additional communications with these outside industry participants.

The 29 documents were sent by NGC employees to Michael Gardner, Executive Director of the Gypsum Association, based in Hyattsville, MD.  Most of the 29 documents were e-mails from Nancy Spurlock, NGC's Director of Corporate Communications, to several NGC employees, copied to Mr. Primrose of Capitologic and Mr. Gardner of the Gypsum Association, and characterized as prepared at the request of NGC General Counsel Mr. Schiffman regarding media coverage of drywall litigation. For all of the same reasons that  NGC's communications with outside lobbyists and public relations firms are outside of the protection of the attorney-client privilege and work product, as set forth above, NGC's communications with the Gypsum Association are not protected. After all, lobbying and public relations for its members are the mainstays of the existence of a trade association such as the Gypsum Association.

NGC asserts the joint defense/common interest privilege for three e-mails from Ms. Spurlock to groups of several NGC employees (including Mr. Mr. Schiffman), with copies to the Gypsum Association (NGCPrivLog01113, NGCPrivLog01279, and NGCPrivLog02534). These documents are generally characterized as containing legal advice concerning drywall litigation. NGC also asserts the joint defense/common interest privilege for an email sent by Pamela Shinkoda of Saint Gobain to Keith Poerschke of NGC, with copies to several NGC employees (including Mr. Schiffman) (NGCPrivLog02718). The latter document was characterized as providing information to an attorney for the purpose of obtaining legal advice.

---

[16] Plaintiffs assume that NGC was mistaken in designating as privileged a document (NGCPrivLog01230) sent to Duke Energy, and two documents (NGCPrivLog01954, NGCPrivLog01955) sent to Mediation Inc., an impartial mediation firm, as NGC could have no expectation of confidentiality for such documents.

NGC's invocation of the joint defense/common interest privilege should be rejected out of hand. Application of the joint defense/common interest privilege would require NGC to establish that NGC had an agreement with the Gypsum Association and its nine other North American gypsum producing members (and for the latter document, with Saint Gobain, a foreign i.e., French, producer of building materials) to confidentially share information for the purpose of pursuing a shared strategy for the prosecution or defense of actual, identifiable litigation claims. *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 387-89 (M.D. N.C. 2003). NGC has not attempted to make such a showing. Such an agreement among domestic gypsum producers on a shared litigation strategy, as distinct from a shared public relations strategy of disassociating their drywall from allegations of defective drywall initially asserted only against Chinese drywall producers, is highly improbable. Indeed, in 2010 when the Judicial Panel for Multidistrict Litigation decided against transferring all pending drywall product liability claims against domestic producers to one district for coordinated proceedings, it did so accepting the domestic producers' argument that "the different manufacturer defendants produced the drywall using different, proprietary techniques and different sources." *In re American-Manufactured Drywall Products Liab. Litig.*, 716 F. Supp. 2d 1367, 1368 (J.P.M.L. 2010). Indeed, it is more likely that domestic drywall producers would point fingers at one another as to defective drywall, than they would share a truly common interest in the defense of claims asserted by customers with defective drywall installed in their premises.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as having been sent to the Gypsum Association or other industry participants, whether or not NGC chose to yellow-highlight them. NGC's communications with the Gypsum

Association and other drywall producers on a lobbying and public relations strategy for claims of

defective drywall are relevant, whether those claims were asserted in Florida or another state.

**Point 5**

**There Is No Attorney-Client Privilege For NGC Communications
to Large Groups of Corporate Employees Including One Attorney**

NGC's yellow-highlighted Privilege Log lists 88 yellow-highlighted documents sent to

large groups of NGC employees, including only one attorney, Mr. Schiffman. See Exhibit 7.

NGC chose not to yellow-highlight on its Privilege Log many more such documents. Most of

these documents are characterized as providing information to Mr. Schiffman for the purpose of

obtaining legal advice.

In order for corporate documents to qualify for the attorney-client privilege, their

predominant purpose must have been for seeking legal advice, as distinct from some business

purpose. In *In re Seroquel Products Liab. Litig.,* 2008 U.S. Dist. LEXIS 39467 (M.D. Fla. 2008),

the court explained the consequences for a corporation seeking to invoke the attorney-client

privilege for documents distributed widely to business executives as well as an in-house

attorney:

> The structure of certain business enterprises, when their legal departments have
> broad powers, and the manner in which they circulate documents is broad, has
> consequences that those companies must live with relative to their burden of
> persuasion when privilege is asserted. *See, e.g., In re Vioxx Products Liability
> Litigation,* 501 F. Supp. 2d 789, 805 (E.D. La. 2007). When the business
> "simultaneously sends communications to both lawyers and non-lawyers, it
> usually cannot claim that the primary purpose of the communication was for legal
> advice or assistance because the communication served both business and legal
> purposes." *Id.* (citing *United States v. Chevron Corp.*, 1996 U.S. Dist. LEXIS
> 8646, 1996 WL 444597 (N.D. Cal. 1996)); *United States v. International Business
> Machines Corp.,* 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("If the document was
> prepared for purposes of simultaneous review by legal and non-legal personnel, it
> cannot be said that the primary purpose of the document is to secure legal
> advice."). Consequently, the privilege does not protect such communications. *In
> re Vioxx,* 501 F. Supp. 2d at 805.

*Seroquel Products Liability Litig., supra*, 2008 U.S. Dist. LEXIS 39467 at *95-96.

Applying the foregoing principles to documents characterized as furnishing information relevant to Mr. Schiffman's furnishing of legal advice, but distributed to large groups of NGC employees in addition to Mr. Schiffman, the primary purpose of the distribution of such documents must have been a business purpose other than obtaining Mr. Schiffman's legal advice. Thus the attorney-client privilege does not attach to such documents.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as having been sent to large groups of NGC employees including one attorney, whether or not NGC chose to yellow-highlight them. NGC's Such documents relating to claims of defective drywall are relevant, whether those claims were asserted in Florida or another state.

**Point 6**

**NGC Has Failed to Establish Attorney-Client Privilege or Work Product Protection for Documents Described Only as "Loose Files" With No Addressee and No Subject Matter**

NGC's yellow-highlighted Privilege Log lists 251 yellow-highlighted documents described only as "Loose Files" (without addressee or subject matter). Of these, 53 are withheld from the personal files of Patrick Radigan, NGC's Director of Environmental Affairs, 22 are withheld from the personal files of Nancy Spurlock, NGC's Director of Corporate Communications[17], and 176 are withheld from NGC corporate files described as authored by Mr.

---

[17] The "Loose Files" of Spurlock are  claimed as work product and variously characterized as "prepared in anticipation of litigation and prepared at direction of Samuel A. Schiffman, Esq. regarding a draft press release for the drywall litigation" (NGCPrivLog01352-01354), "prepared in anticipation of litigation at direction of Samuel A. Schiffman, Esq. regarding drywall litigation publicity" (NGCPrivLog01367-01370), and "prepared in anticipation of litigation regarding present drywall lawsuit alleging sulphurous offgassing." (NGCPrivLog01351, 01355-01366).

Radigan.[18] See Exhibit 8. NGC chose not to yellow-highlight on its Privilege Log many more such documents.

As set forth below, such sparse description of the basis for a claim of attorney-client privilege or work product protection on a Privilege Log is insufficient under Fed. R. Civ. P. 26(b)(3) & (5). The generic descriptor "Loose Files" (without addressee or subject matter) is a synonym for collections of pre-existing documents, which must be produced if relevant or likely to lead to the discovery of relevant materials. The Spurlock "Loose Files" are characterized as litigation publicity, hardly a topic of confidential work product since publicity is intended for public release. The Radigan "Loose Files" are said to concern environmental law compliance, but with no further description, it cannot be said that the attorney-client privilege is properly claimed.

Therefore, Plaintiffs request that the Court order NGC to produce the documents listed on its Privilege Log as "Loose Files" of Mr. Radigan or Ms, Spurlock with no addressee and no subject matter, whether or not NGC chose to yellow-highlight them. NGC's litigation publicity and environmental compliance documents as to claims of claims of defective drywall are relevant, whether those claims were asserted in Florida or another state.

### Point 7

### NGC Has Failed to Establish That Documents Prepared Prior to October 21, 2009 Are Work Product Prepared in Reasonable Anticipation of Identifiable Litigation

NGC's Privilege Log lists 14 yellow-highlighted documents claimed to be work product prepared in anticipation of litigation, yet the date of preparation precedes October 21, 2009, when the *Yee* action, the first domestic drywall product liability action, was filed against NGC.

---

[18]The Radigan "Loose Files" are claimed as attorney-client privileged and uniformly characterized as "prepared at direction of attorney and provided to Samuel A. Schiffman, Esq. to enable provision of legal advice regarding compliance with environmental laws."

The dates of several of the 14 documents (first quarter 2009) generally correspond to the January 30, 2009 filing of the *Allen* action, the first Chinese drywall product liability action. See Exhibit 9. NGC chose not to yellow-highlight on its Privilege Log many more such documents.

As set forth above, application of the work product doctrine requires a showing that a document was prepared in ongoing or anticipated litigation. If the litigation was merely anticipated, the proponent of the protection must establish that there was a reasonable anticipation of specific, identifiable lawsuit, rather than a general apprehension of potential litigation. *In re Hillsborough Holdings Corp.*, *supra*, 132 B.R. at 481. In any event, NGC has failed to carry its burden of establishing that the 14 documents[19] dated before October 21, 2009 were prepared in anticipation of litigation.[20]

Therefore, Plaintiffs request that the Court Order NGC to produce all documents listed on its Privilege Log as subject to work product protection (but not the attorney-client privilege), whose date of preparation precedes the October 21, 2009 filing of the first domestic drywall product liability action asserting claims against NGC. The Court should also order NGC to produce any other documents claimed as work product (but not the attorney-client privilege), prepared prior to October 21, 2009. Documents concerning claims asserted against drywall producers other than NGC are relevant, whether those claims were asserted in Florida or another state.

---

[19] Four of the 14 documents are also "Loose Files" of Ms. Spurlock, with no addressee or subject matter, covered also in the foregoing section.

[20] Attorney-client privilege has not been claimed for any of these 14 documents.

<u>C</u>ONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel production of documents withheld on claims of attorney-client privilege and work product protection should be granted in all respects.

<div align="center"><u>**Local Rule 3.01(g) Certification**</u></div>

I hereby certify that Plaintiffs' counsel conferred with Defendant's counsel in good faith to attempt to resolve the issues raised by this motion.  Defendant opposes this motion.

Dated: January 5, 2012

        S/  GREGORY S. WEISS
THEODORE J. LEOPOLD
Fla. Bar. No. 705608
GREGORY S. WEISS
Fla. Bar No. 163430
LEOPOLD LAW, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
Fax: (561) 515-1401

CHARLES J. La DUCA
DANIEL M. COHEN
CUNEO GILBERT & La DUCA LLP
106-A Columbus Street
Alexandria, VA 22314
Tel.: (202) 789-3860
Fax: (202) 789-1813

BRIAN W. WARWICK
Fla. Bar. No. 0605573
VARNELL & WARWICK, P.A.
20 La Grande Blvd.
The Villages, FL 32159
Tel.: (352) 753-8600
Fax: (352) 753-8606

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

<div style="margin-left: 40%;">

s/GREGORY S. WEISS
GREGORY S. WEISS (Florida Bar No.: 163430)
Email:  gweiss@leopold-law.com
LEOPOLD LAW, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401

*Attorneys for Plaintiffs*

</div>

## SERVICE LIST

Christopher J.M. Collings, Esq
MORGAN LEWIS & BOCKIUS
5300 Wachovia Financial Center
200 South Biscayne Blvd.
Miami, FL  33131
Phone: (305) 415-3000
Fax: (305) 415-3001
ccollings@morganlewis.com
Attorney for National Gypsum Company


James D. Pagliaro, Esq.
Thomas V. Ayala, Esq.
MORGAN LEWIS & BOCKIUS
1701 Market Street
Philadelphia, PA  19103
Phone: (215) 963-5000
Fax :   (215) 963-5001
jpagliaro@morganlewis.com
tayala@morganlewis.com
Attorneys for National Gypsum Company


Scott W. Anderson, Esq.
SHOOK, HARDY & BACON, L.L.P.
100 North Tampa St., Suite 2900
Tampa, FL  33602
Phone : (813) 202-7100
Fax :    (813) 221-8837
sanderson@shb.com
Attorney for Lowe's Home Centers