UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

Civil Action No. 2:10-cv-00405-FtM-29SPC

CHRIS BRUCKER, TREVER S. NUTTING,
XIOMARA RAVELO, WILFREDO E. RETANA
and BEATRIX CELSA RETANA, individually, and on
behalf of all others similarly situated,

     Plaintiffs,

vs.

LOWES HOME CENTERS, INC., a North Carolina
Corporation, and NATIONAL GYPSUM COMPANY,
a Delaware Corporation,

     Defendants.
_____/

**DEFENDANT NEW NGC INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION AND INCORPORATED MEMORANDUM IN SUPPORT**

Dated: February 3, 2012

/s/ Thomas V. Ayala
Christopher J.M. Collings
Fla. Bar No.: 184403
MORGAN, LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2339
(305) 415-3000 (Phone)
(305) 415-3001 (Fax)
ccollings@morganlewis.com

James D. Pagliaro
Thomas V. Ayala
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (Phone)
(215) 963-5001 (Fax)
*Attorneys for Defendants, National Gypsum Company*

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND...................................................................................... 3

III. ARGUMENT............................................................................................................... 5

    A.    Certain National Gypsum's Communications with Various Consultants are Protected by the Attorney-Client and/or Work Product Privileges ....................... 5

        1.    Mr. Primrose is not a "Lobbyist" for National Gypsum and his communications are protected by the attorney-client privilege ................. 5

        2.    National Gypsum properly withheld privileged communications with public relations firms ....................................................................... 7

        3.    National Gypsum properly withheld communications with environmental consultants that are protected by the attorney-client and/or work product privileges ................................................................ 10

    B.    National Gypsum's Communications with the Gypsum Association are Protected by the Common Interest/Joint Defense Privilege ............................... 11

    C.    National Gypsum's General Counsel's Communications with Corporate Employees Identified on National Gypsum's Privilege Log are Protected by the Attorney- Client Privilege ......................................................................... 12

    D.    National Gypsum's Privilege Log Provides Sufficient Description Regarding Loose Files under Eleventh Circuit Law ........................................... 13

    E.    National Gypsum's Documents Prepared Prior to October 21, 2009 Are Work Product .................................................................................................... 14

IV. CONCLUSION.......................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**ALL CASES**

*Abdallah v. Coco-Cola Co.*,
  CIV-A1:98CV3679RWS, 2000 WL 33249254 (N.D. Ga. Jan. 25, 2000) ..............................10

*Bausch & Lomb, Inc. v. Ciba Vision Corp.*,
  No. 07-cv-6575, 2008 U.S. Dist. LEXIS 73598 (W.D.N.Y. Sept. 9, 2008)............................12

*F.T.C. v. GlaxoSmithKline*,
  294 F.3d 141 (D.C. Cir. 2002)..................................................................................................6

*Fojtasek v. NCL (Bahamas) Ltd.*,
  262 F.R.D. 650 (S.D. Fla. 2009)..............................................................................................11

*In re Copper Mkt. Antitrust Litig.*,
  200 F.R.D. 213 (S.D.N.Y. 2001) ....................................................................................... 8, 14

*In re Hillsborough Holdings Corp.*,
  132 B.R. 478 (Bankr. M.D. Fla. 1991) ..................................................................................6, 9

*In re New York Renu with Moistureloc Product Liab. Litig.*,
   No. 2:06-MN-77777-DCN, 2008 U.S. Dist. LEXIS 88515 (D.S.C. 2008) .............................9

*In re Seroquel Products Liab. Litig.*,
  No. 6:06-md-1769-Orl-22DAB, 2008 U.S. Dist. LEXIS 39467 (M.D. FA. 2008).................12

*MCC Management of Naples, Inc. v. Arnold & Porter*, LLP,
  No. 2:07-cv-387, 2010 WL 2431849 ......................................................................................13

*U.S. Postal Service v. Phelps Dodge Refining Corp.*,
  852 F. Supp. 156 (E.D.N.Y. 1994) ..........................................................................................10

*Volpe v. Conroy*,
  720 So. 2d 537 (Fla. 4th Dist. Ct. App. 1998) .........................................................................7

*Wolf Creek Ski Corp. v. Leavell-McCombs Joint Venutre*,
  No. 04-CV-01099-JLK-DLW, 2006 U.S. Dist. LEXIS 23093 (D.Colo. 2006) .......................7

I.  **INTRODUCTION**

More than a year after National Gypsum served plaintiffs with its privilege log, and without attempting to confer with National Gypsum about several categories of documents, plaintiffs now request that the Court enter an order, at the close of fact discovery and just months before trial, compelling production of thousands of National Gypsum's privileged documents. Plaintiffs have failed to demonstrate why they are entitled to National Gypsum's privileged documents.  Plaintiffs' motion simply asserts -- without specific reference to National Gypsum's descriptions of the applicable privileges on its log or any evidence -- that National Gypsum is not entitled to claim privileges over thousands of documents, including communications between its in-house counsel and employees, environmental consultants, public relations consultants and its industry group.  Plaintiffs' failure to identify the specific entries at issue deprives National Gypsum of the opportunity to adequately defend its privilege designations and ultimately inhibits the Court's ability to conduct a manageable *in camera* review.

National Gypsum has invested significant resources in preparing and evaluating its privilege claims.  It has not made blanket assertions of privilege.  Indeed, National Gypsum has produced numerous communications between and among its environmental consultants, public relations consultants, industry group and its lawyers that, after careful evaluation, it decided were not privileged. National Gypsum has properly asserted the attorney-client and/or work product privileges over other selected (but not all) communications:

1. National Gypsum properly withheld communications with Steve Primrose because such communications assisted National Gypsum's General Counsel, Samuel A. Schiffman, with the rendering of legal advice.  Steve Primrose was as an outside

consultant on regulatory issues to Samuel A. Schiffman, not a lobbyist for National Gypsum.

2. National Gypsum properly asserted the attorney-client and/or work product privileges over its communications with public relations consultants because such communications were for the purposes of obtaining legal advice.

3. National Gypsum properly asserted the attorney-client and/or work product privileges over communications with environmental consultants because such communications were for the purposes of obtaining legal advice.

4. National Gypsum properly asserted the joint defense/common interest privilege over communications with the Gypsum Association members because National Gypsum and Gypsum Association members have a common interest and an agreement to cooperate to further that interest.

5. National Gypsum properly asserted the attorney-client and/or work product privileges over legal communications to large groups of non-attorneys at National Gypsum because such communications were for purposes of seeking or obtaining legal, not business advice.

6. National Gypsum's privilege log contains sufficient description regarding "loose files" to properly assert the attorney-client and/or work product privileges.

7. National Gypsum properly asserted the work product privilege over documents that were prepared prior to filing of the first action against National Gypsum because the work product privilege attaches where a party reasonably anticipates *any* litigation or investigation.

-3-

Plaintiffs actually acknowledge that the law recognizes the various privileges that National Gypsum has asserted on its privilege log to protect certain communications from production. There is no dispute that, under certain circumstances, the law protects from disclosure communications between and among: in-house lawyers and employees; environmental consultants and lawyers; public relations consultants and lawyers; industry groups lawyers and members; and communications and other work product prepared in anticipation of litigation. Plaintiffs' motion is devoid of facts which could even possibly demonstrate that National Gypsum has improperly withheld documents from production on the basis of privilege. Their motion rests simply on unsupported assertions that National Gypsum's claims of privilege do not fall within the scope of the privileges recognized under the law. Plaintiffs' Motion to Compel should be denied.

II.  FACTUAL BACKGROUND

At plaintiffs' request National Gypsum served plaintiffs a privilege log from another case for use in this litigation. Plaintiffs have been in possession of approximately 400,000 documents produced to their counsel since January of 2011 and in possession of the privilege log produced in *Yee v. National Gypsum Company*, No. 3:09-cv-8189 (D. Ariz) ("*Yee*") since February of 2011, yet they waited almost a year to file their Motion to Compel to challenge the privilege log that was produced in *Yee*. Similar to plaintiffs' statewide class allegations in this case, the *Yee* case involved nationwide class allegations that National Gypsum drywall was "defective" and caused damage to home structures and mechanical systems. A critical difference between this case and *Yee* is that the allegations in *Yee* implicated National Gypsum's manufacturing plants nationwide, while this case involves only Florida manufacturing plants.

The document production and privilege log in *Yee* were nationwide in scope, corresponding to the nationwide class allegations in the *Yee* action and the broad scope of Plaintiff Yee's discovery requests. In preparing the *Yee* privilege log, attorneys for National Gypsum spent hours and incurred significant costs in reviewing, analyzing, and carefully describing thousands of privileged documents.[1]

Plaintiff Brucker requested access to the production and logs from *Yee* when he, like the plaintiff before him, was pursuing certification of his case as a nationwide class action. Plaintiff Brucker, however, has since withdrawn his nationwide class allegations with the filing of his Second Amended Complaint. *See* Second Amended Class Action Complaint ¶ 72. Now that Plaintiff Brucker has withdrawn his nationwide class allegations, many of the issues raised in their Motion to Compel are moot because many of the logged nationwide documents are irrelevant to plaintiffs' individual claims and their attempt to represent a putative Florida-only class.

Plaintiffs' counsel acknowledged that only certain documents on the *Yee* privilege log are relevant to their claims, and requested National Gypsum submit an updated log highlighting in yellow the documents that were relevant to this case. *See* November 10, 2011 Letter from Gregory Weiss regarding National Gypsum's Privilege Log at pg. 2, attached hereto as Ex. 1 (requesting "an indication of which . . . documents reference Apollo Beach would be useful in limiting plaintiffs' focus to relevant documents, as would an indication as to what documents reference any of the subjects listed in plaintiffs' 30(b)(6) notices, including bacteria or sulfur

---

[1] In a good faith attempt to resolve the issues raised in Plaintiffs' Motion to Compel, National Gypsum has undertaken an additional analysis of the privilege log produced in *Yee*, de-designated and produced certain documents, and produced a revised log to Plaintiffs eliminating entries for the de-designated documents to be produced.

reducing bacteria"). In an effort to comply with this request, National Gypsum developed search terms to identify documents with relevancy to this case and submitted an updated log highlighting all documents that hit on those search terms. *See* November 28, 2011 letter from Thomas Ayala responding to plaintiffs' November 10, 2011 letter regarding National Gypsum's Privilege Log at pg. 1, attached hereto as Ex. 2 (explaining that "[w]e have searched the documents listed in the Logs for the terms (McChesney or Macary or Peterson or Shaw or Winn or Gulick or Bennett or Florida or TECO or Apollo or APL or APB or bacteri! or SRB) and have highlighted in yellow the documents that hit on the terms"). Plaintiffs raised no objections to the search terms and did not request that any additional search terms be run. Plaintiffs now, for the first time, attempt to argue that National Gypsum, "arbitrarily applied (or failed to apply) yellow-highlighting to the documents" that pertain to the plaintiffs' claims. *See* Pls.' Mot. at 4. Plaintiffs have failed to engage in a meaningful meet and confer process regarding certain issues raised in their Motion to Compel and are now challenging for the first time in this Motion the assertion of privilege over National Gypsum's communications with Steve Primrose, public relations consultants, and environmental consultants. As set forth below, National Gypsum properly withheld documents based on one or more applicable privileges consistent with Eleventh Circuit law.

### III.   ARGUMENT

####    A.   **Certain National Gypsum's Communications with Various Consultants are Protected by the Attorney-Client and/or Work Product Privileges**

#####      1.   **Mr. Primrose is not a "Lobbyist" for National Gypsum and his communications are protected by the attorney-client privilege**.

Without citing any factual evidence, plaintiffs mischaracterize the role of Mr. Primrose, as well as the nature of his communications with National Gypsum. Throughout Mr. Primrose's

dealings with National Gypsum, Mr. Primrose did not serve as a lobbyist but rather served as an outside consultant on regulatory issues to National Gypsum.[2]  Contrary to plaintiffs' assertion that "the subject of Mr. Primrose's communications with National Gypsum was the formulation of statements to be made to government policy-makers, i.e., statements intended for third parties" (Pls.' Mot. at 9), Mr. Primrose's communications with National Gypsum were actually to assist Mr. Schiffman with the rendering of legal advice.[3]  National Gypsum's privilege log properly describes these communications.  Any communications with Mr. Primrose that were not for the purpose of rendering legal advice have already been produced to plaintiffs.  *See* NG00031228 and NG00308956 attached hereto as Ex.3 (to be filed under seal).

Communications between regulatory consultants and attorneys are protected under the attorney-client privilege if regulatory consultants are retained to assist an attorney in providing legal advice.  *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (holding that the privilege extends to government affairs consultant retained by the company where the consultant possesses information needed by attorneys to provide legal advice to the client).  Under *GlaxoSmithKline*, communications with Mr. Primrose are protected under the attorney client-privilege because Mr. Primrose assisted Mr. Schiffman with the rendition of legal services

---

[2] *See Capitologic Strategic Consulting*, http://capitologic.com/StratConsult.html (last visited February 2, 2012) (describing Capitologic's strategic consulting services).

[3] Plaintiffs argue that National Gypsum's communications with Mr. Primose were intended to be made public (i.e. communicated to "government policy-makers") and thus, under *In re Hillsborough Holdings Corp.*, 132 B.R. 478, 481 (Bankr. M.D. Fla. 1991), such communications are not privileged.  Plaintiffs have misconstrued the subject of National Gypsum's communications with Mr. Primrose.  In fact, such communications were not intended to be made public, but rather were for internal consulting purposes necessary for the rendition of legal services.

related to regulatory issues. National Gypsum's privilege log descriptions adequately substantiate the basis of this privilege.[4]

The cases cited by plaintiffs are not persuasive. First, the law related to lobbyists (*see e.g., Wolf Creek Ski Corp. v. Leavell-McCombs Joint Venutre*, No. 04-CV-01099-JLK-DLW, 2006 U.S. Dist. LEXIS 23093 at *6 (D.Colo. 2006)) is misplaced as Mr. Primrose did not serve as a lobbyist for National Gypsum. Second, *Volpe v. Conroy*, 720 So. 2d 537, 539 (Fla. 4th Dist. Ct. App. 1998) is unpersuasive because it interprets state privilege law and is inapplicable to a privilege dispute in federal court.

Lastly, plaintiffs fail to provide any evidentiary support that might suggest communications with Mr. Primrose are not privileged. Plaintiffs are not entitled to the privileged communications of Mr. Primose because they have not demonstrated any legal or factual support for these documents.

### 2. National Gypsum properly withheld privileged communications with public relations firms.

Again, plaintiffs mistakenly categorize the nature of the communications between public relations firms Hill & Knowlton and Porter Novelli. They believe the communications merely reflect the publicity strategy to address the Chinese drywall problem. However, as the descriptions on National Gypsum's log clearly demonstrate, National Gypsum has engaged public relations firms to assist in developing its own litigation strategy.

---

[4] *See, e.g.*, National Gypsum's Privilege Log, at NGCPrivLog00669 (described as "[e]mail communication between non-attorneys and Samuel A. Schiffman, Esq., requesting legal advice regarding a CPSC news conference.") and NGCPrivLog00032 (described as "[e]mail communications between attorney Samuel A. Schiffman and non-attorneys providing legal advice regarding potential EPA regulation of FGD") attached hereto as Ex. 4 (to be filed under seal).

"Courts have held that the attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). The court in *In re Copper Mkt. Antitrust Litig.* upheld the attorney-client privilege designations over communications with public relation firms. The court instructed:

> [C]onfidential communications between [public relation firm] and [company's counsel], or between [public relation firm] and [the company], or among [public relation firm], [in-house counsel] and [outside counsel] that were made for the purpose of facilitating the rendition of legal services to [the company] can be protected from disclosure by the attorney-client privilege.

*See id.* at 220.

Similar to the communications with the public relations firms protected *In re Copper Mkt. Antitrust Litig.*, the privileged communications between National Gypsum and their public relations consultants were for the purpose of obtaining legal advice. *See, e.g.*, Ex. 4 at NGCPrivLog01114 (described as "[e]mail communication between an attorney and non-attorneys providing information relevant to the furnishing of legal advice regarding the present drywall litigation alleging sulfurous off-gassing."). Plaintiffs have created a unique situation in which they have attempted to litigate their claims through the media in what can at best be described as a litigation strategy to coerce National Gypsum into settlement.[5] To combat plaintiffs' strategy, National Gypsum has engaged public relations firms to assist in developing

---

[5] *See e.g.*, *Brenda Brincku's Twitter Account*, (January 16, 2012, 12:36 PM) http://twitter.com/BBrincku (stating "I'm looking for people that have American defective drywall in their homes. Be a fan of my Facebook page American & Chinese Defective Drywall"; "If you have defective drywall please let me know?"); Armen Keteyian, *Drywall Blamed for Homeowners' Nightmare*, CBSNews.com, http://www.cbsnews.com/stories/2009/03/26/cbsnews_investigates/main4895737.shtml (last visited January 16, 2012).

its own litigation strategy.  *See, e.g.*, Ex. 4 at NGCPrivLog00884 (described as "[e]mail communication from non-attorney to non-attorney prepared at direction of attorney regarding NGC's search for PR counsel.").  Communications with these firms to further that litigation strategy are appropriately designated as privileged.

Further, it is noteworthy that plaintiffs' reliance on *In re New York Renu with Moistureloc Product Liab. Litig.* actually supports National Gypsum's argument.  *See* Pls.' Mot. at 11 (citing No. 2:06-MN-77777-DCN, 2008 U.S. Dist. LEXIS 88515 at *25 (D.S.C. 2008) (holding that communications between an attorney and the public relations firm are privileged when the communications are necessary to "effectuate the lawyers legal services.")).  National Gypsum's claims of privilege fit squarely within the scope of the privilege recognized in *Renu*.  National Gypsum has carefully reviewed the communications with their public relations consultants and has only withheld documents that are truly privileged.

Plaintiffs further argue that "where the subject matter of communication between a corporate attorney and an outside consultant is the preparation of statements intended to be released publicly, there is no attorney-client or work product protection."  Pls.' Mot. at 11. (citing *In re Hillsborough.,* 132 B.R. at 481).  Once again, plaintiffs' reliance on *In re Hillsborough* is misguided.  National Gypsum has not withheld such documents, and the press releases are in the public domain and are equally available for plaintiffs' review.  National Gypsum is only withholding those documents that contain communications between public relations consultants and National Gypsum that were made for the purpose of facilitating legal services.  National Gypsum has produced all non-privileged communication with their public relations consultants.  For example, National Gypsum has produced communications from Hill &

-9-

Knowlton to National Gypsum regarding Chinese Drywall.  *See* NG00410670 and NG00410688 attached hereto as Ex. 5 (to be filed under seal). [6]

Lastly, plaintiffs have failed to provide any factual support to demonstrate that the public relations consultants did not assist Samuel A. Schiffman in the rendition of legal advice. Plaintiffs' counsel had ample opportunity to depose any of the public relations consultants during the discovery period.  National Gypsum has appropriately designated certain communications with public relations consultants as privileged and plaintiffs' counsel has failed to suggest to otherwise.

### 3. National Gypsum properly withheld communications with environmental consultants that are protected by the attorney-client and/or work product privileges.

Once again, plaintiffs simply misunderstand the law regarding privilege and misinterpret the log descriptions of National Gypsum's communications with environmental consultants. Plaintiffs allege that National Gypsum has not demonstrated that its communications with consultants: (a) are related to information collected and analyzed from "confidential client sources" and (b) were necessary to render legal advice. Pls.' Mot. at 13.

Courts have held that "[w]here counsel seeks and obtains outside consulting services, the attorney-client privilege has been extended to such third parties 'employed to assist a lawyer in the rendition of legal services.'"  *Abdallah v. Coco-Cola Co.*, CIV-A1:98CV3679RWS, 2000 WL 33249254, at *3 (N.D. Ga. Jan. 25, 2000) (citing *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolutions Trust Corp.*, 5 F.3d 1508, 1514 (D.C.Cir.1993)).  Plaintiffs rely upon *U.S. Postal Service v. Phelps Dodge Refining Corp.,* 852 F. Supp. 156, 161-62 (E.D.N.Y. 1994)

---

[6] As represented to Plaintiffs, these documents will be produced in the near future in a supplemental production.

-10-

to impose an additional requirement to extend the attorney-client privilege to communications with environmental consultants. Specifically, plaintiffs argue that the information collected and analyzed by environmental consultants must be derived from "confidential client sources." *See* Pls.' Mot. at 12. The Eleventh Circuit law imposes no such requirement. As National Gypsum clearly described in their privilege log, the communications with environmental consultants were necessary for the rendition of legal advice, and that is sufficient to satisfy the burden under Eleventh Circuit law.[7] Further, National Gypsum has produced those communications with environmental consultants that were not privileged, such as communications with ARCADIS regarding permits. *See* NG00212907 and NG00006923 attached hereto as Ex. 6 (to be filed under seal).

> B. **National Gypsum's Communications with the Gypsum Association are Protected by the Common Interest/Joint Defense Privilege**

Plaintiffs' attack on the application of the joint defense/common interest privilege to National Gypsum's communications with Gypsum Association members (i.e. NGCPrivLog01113, NGCPrivLog01279, NGCPrivLog02534) is also unavailing. The joint defense privilege protects documents and communications shared among entities that have a common litigation interest and an agreement to cooperate to further that interest. *See Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 656 (S.D. Fla. 2009). Here, National Gypsum and Gypsum Association members agreed to undertake a joint defense in defending against potential litigation concerning domestically produced drywall.

---

[7] *See* Ex. 4 at NGCPrivLog02854 (described as "[e]mail communication from attorney to non-attorney seeking information relevant to the furnishing of legal advice regarding sampling of board from homes in Eustis Florida) and NGCPrivLog00217 (described as [c]omprehensive emissions test report prepared at the direction of attorney William Toole Esq. prepared in anticipation of litigation).

Plaintiffs argue that the joint defense/common interest privilege cannot apply where entities are in direct business competition with one another. Plaintiffs' position is meritless. The privilege applies where businesses – even competitors – have a shared interest in defending litigation. *See, e.g.*, *Bausch & Lomb, Inc. v. Ciba Vision Corp.*, No. 07-cv-6575, 2008 U.S. Dist. LEXIS 73598, at *1-2 (W.D.N.Y. Sept. 9, 2008) (interpreting terms of joint defense agreement entered between competitors). In support of their argument, plaintiffs point to National Gypsum's representations before the Judicial Panel on Multidistrict Litigation that emphasize the distinctions and competition among domestic drywall distributors. *See* Pls.' Mot. at 15 (citing JMPL Order stating "the different manufacturer defendants products the drywall using different, proprietary techniques and different sources"). Plaintiffs fundamentally mischaracterize the privilege by reading in a requirement that the entities' business interests be aligned. This is not a requirement of the joint defense/common interest privilege. Instead, the cornerstone of the privilege is the alignment of the parties' *litigation* interests. Indeed, the privilege is often applied where entities are in direct competition with one another but still shared common litigation interest.

C. **National Gypsum's General Counsel's Communications with Corporate Employees Identified on National Gypsum's Privilege Log are Protected by the Attorney- Client Privilege**

Plaintiffs assume that because emails were distributed to "large" groups of National Gypsum employees it must have been for a business purpose rather than for a legal purpose. The assertion is incorrect; only those communications that served a legal purpose were withheld and included on National Gypsum's privilege log.

Plaintiffs cite *In re Seroquel Products Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 U.S. Dist. LEXIS 39467 (M.D. FA. 2008) for the proposition that documents distributed to both

business executives and in-house counsel must seek legal advice to be protected by the attorney-client privilege. However, plaintiffs misunderstand the privilege analysis for documents distributed to large groups of employees. The analysis focuses on the nature of the communication not the volume of documents. National Gypsum has only withheld communications that conveyed legal advice and has sufficiently described the documents in the privilege log.[8] National Gypsum has produced those communications with large groups that conveyed purely business advice.

> D. **National Gypsum's Privilege Log Provides Sufficient Description Regarding Loose Files under Eleventh Circuit Law**

Without citing any legal support, plaintiffs claim that National Gypsum's privilege log does not sufficiently describe the loose files of Nancy Spurlock and Patrick Radigan. *See* Pls.' Mot. at 18. Specifically, plaintiffs argue that the "generic descriptor 'Loose Files' (without addresses or subject matter) is a synonym for collections of pre-existing documents, which must be produced." Pls.' Mot. at 18. However, each of these entries on National Gypsum's privilege log includes at a minimum the date, custodian, type of document, description of the document, and the basis for privilege. National Gypsum's logs collectively contain over 4,000 entries and laboriously justify the privilege assertions on a document by document basis. Eleventh Circuit law would not have required National Gypsum to engage in such an effort. *See MCC Management of Naples, Inc. v. Arnold & Porter*, LLP, No. 2:07-cv-387, 2010 WL 2431849, at *1. (M.D. Fla. June 16, 2010) (Steele, J.) ("[S]heer volume of documents . . . render a document by document log unduly burdensome and unnecessary"); *see also id.* at *1 (citing Fed. R. Civ. P.

---

[8] *See,* Ex. 4 at NGCPrivLog00053 (described as "[e]mail communications between an attorney and non-attorneys requesting legal advice regarding EPA regulatory changes") and NGCPrivLog00110 (described as "[e]mail communication between an attorney and non-attorneys containing attorney mental impressions regarding the definition of corrosive drywall).

-13-

26(b)(5) advisory committee's notes (1993) ("details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected")). Nonetheless, plaintiffs received logs with document-specific detail. National Gypsum's logs contain sufficient detail concerning the sender and recipients of all privileged documents to allow plaintiffs to assess the privilege assertion.[9]

Plaintiffs also argue that because the Spurlock "Loose Files" are characterized as litigation publicity it is "hardly a topic of confidential work product" (Pls.' Mot. at 18). However, as discussed previously, National Gypsum is entitled assert privilege over communications regarding litigation publicity if they were for the purpose of obtaining legal advice. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 217. Plaintiffs' argument that the descriptions of the Radigan "Loose Files" are not sufficient enough to assert the attorney-client privilege (Pls.' Mot. at 18) is also unavailing because as discussed previously National Gypsum's description contain sufficient detail under Eleventh Circuit law.

E.  **National Gypsum's Documents Prepared Prior to October 21, 2009 Are Work Product**

Lastly, Plaintiffs allege that National Gypsum has failed to establish that documents prepared prior to the commencement of the *Yee* litigation are subject to the work production protection. Pls.' Mot. at 18-19. However, National Gypsum provided adequate descriptions for

---

[9] *See*, Ex. 4 at NGCPrivLog00484(described as "[r]eport prepared at direction of attorney providing information relevant to the furnishing of legal advice regarding compliance with environmental laws") and NGCPrivLog01351 (described as "[m]emorandum prepared at direction of attorney regarding current litigation").

-14-

all documents that were logged as attorney work product.[10] Each description provided the purpose and subject matter of the communication. Descriptions beyond what was included in the log would risk divulging the privilege the work product seeks to protect and are not necessary to substantiate the privilege asserted.

Pursuant to Florida Rule of Civil Procedure 1.280(b)(3), materials prepared in anticipation of litigation by or for a party or its representative are protected from discovery under the work product privilege, unless the party seeking discovery has need of the material and is unable to obtain the subsequent equivalent of the material without undue hardship. Plaintiffs argue that the work product privilege cannot attach unless the document was prepared in anticipation of the specific litigation at hand. This position is inconsistent with applicable law governing the work product doctrine. Here, the work product privilege can be asserted in as early as February 2009. At that time, the Florida Department of Health contracted Unified Engineering, Inc. to analyze American-manufactured drywall, including National Gypsum drywall. Assertion of the work product privilege is appropriate over documents that were prepared in anticipation of that investigation because it was likely to lead to potential litigation.

Although plaintiffs allege that National Gypsum has not met its burden of establishing the work product protection, it is really plaintiffs who have failed to meet their burden. National Gypsum has sufficiently described those documents protected as work product and plaintiffs have failed to offer any evidence that might demonstrate their need for the information and/or undue hardship it would encounter if they tried to request the information elsewhere.

---

[10] *See*, Ex. 4 at NGCPrivLog01576 (described as "[e]mail communication from attorney to non-attorneys containing attorney mental impressions regarding Chinese drywall/Florida homes inquiries") and NGCPrivLog01650 (described as "[e]mail communication from attorney to non-attorneys containing attorney mental impressions regarding media visit")

IV. **CONCLUSION**

Defendant National Gypsum respectfully urges this Court to deny Plaintiffs' Motion to Compel production of National Gypsum's documents withheld on claims of attorney-client privilege and work product protection.

Dated: February 3, 2012

/s/ Thomas V. Ayala
Christopher J.M. Collings
Fla. Bar No.: 184403
MORGAN, LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2339
(305) 415-3000 (Phone)
(305) 415-3001 (Fax)
ccollings@morganlewis.com

James D. Pagliaro
Thomas V. Ayala
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (Phone)
(215) 963-5001 (Fax)
*Attorneys for Defendants, National Gypsum Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 3, 2012, I electronically filed the foregoing document with the Clerk of the Court, causing the foregoing document to being served this day on all counsel of record via electronic mail.

                                             /s/ Thomas V. Ayala
                                             James D. Pagliaro
                                             Thomas V. Ayala
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             1701 Market Street
                                             Philadelphia, PA 19103
                                             (215) 963-5000 (Telephone)
                                             (215) 963-5001 (Fax)
                                             Attorneys for Defendants